UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DARRELL GILMORE, *et al.*,

      Plaintiffs,

      v.

DISTRICT OF COLUMBIA, *et al.*,

      Defendants.

Civil Action No. 17-cv-1046 (TSC)

## MEMORANDUM OPINION

Plaintiffs sued the District of Columbia ("District") and several Metropolitan Police Department ("MPD") officers after the officers executed a search warrant at Plaintiffs' home under the mistaken belief that a robbery suspect lived there. The court granted in part and denied in part Defendants' motion for summary judgment, finding at the outset that the search warrant was valid. Plaintiffs moved for reconsideration, contending that the court considered several items of inadmissible evidence in analyzing the validity of the warrant. Having considered the record and the briefing, the court will DENY Plaintiffs' Motion.

## I.      BACKGROUND

Following a violent altercation at the Maya Angelou Public Charter School in which two students were robbed at gunpoint, MPD officers identified a suspect and sought to search his residence. Mem. Op., ECF No. 74 at 2–3. MPD Detective Booher testified that, before seeking a warrant, he spoke with a school employee, who provided him with their suspect's address—on Q Street S.E. ("the Q Street address")—along with the general demographics form the suspect had submitted to the school, which also showed that he lived at the Q Street address. *Id.* Detective Booher also testified that he checked the TLO database—a comprehensive TransUnion

database—to confirm the suspect's address. *Id.* at 3. The officers then applied for a warrant to search the Q Street address, which was granted by a D.C. Superior Court Judge. *Id.* Detective Booher further testified that before the warrant was executed, Officer Singletary told him he ran another TLO database search—this time a "reverse" search—to confirm the suspect's address. *See id.*

Executing the search warrant did not go as planned. After Plaintiff Gilmore opened the door at the Q Street address naked and covered in shaving cream, the officers discovered that their suspect did not, in fact, reside at the Q Street address. *Id.* at 4; *see also id.* at 4–5 (explaining both parties' versions of the events after the police arrived at the Q Street address).

Plaintiffs subsequently sued the District and several MPD officers in D.C. Superior Court, alleging violations of the Fourth Amendment under 42 U.S.C. § 1983 and District tort law. *See* Compl., ECF No. 1-1 at 2. Several months later, Defendants removed the case to this court. *See* Notice of Removal, ECF No. 1. Following multiple amendments to the pleadings, Plaintiffs filed their Third Amended Complaint—the operative Complaint—in September 2018. *See* Third Am. Compl., ECF No. 38-1. Following discovery, Defendants moved for summary judgment on all claims. Mot. for Summ. J., ECF No. 59.

The court granted in part and denied in part Defendants' motion for summary judgment. Order, ECF No. 75. Regarding the Fourth Amendment claims, the court found that the search warrant was valid before granting summary judgment to the District and allowing Plaintiffs to amend their Complaint regarding their claims against the officers. Mem. Op. at 7–17. The court also granted summary judgment to Defendants on the negligent supervision and training claims but denied summary judgment on the negligent infliction of emotional distress claim. *Id.* at 18–24.

Plaintiffs sought reconsideration of the court's decisions on the Fourth Amendment

claims, arguing that the court should have denied summary judgment and held that there was a

genuine dispute of material fact regarding whether the search warrant was valid. *See* Mot. for

Recons., ECF No. 78 ("Motion").

## II.      LEGAL STANDARD

### A.      Federal Rule of Civil Procedure 60(b)

A "court may relieve a party . . . from a final judgment" because of "mistake,

inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), as well as "any other

reason that justifies relief," Fed. R. Civ. P. 60(b)(6). "Rule 60(b) provides an exception to

finality," *Lee Mem'l Hosp. v. Becerra*, 10 F.4th 859, 863 (D.C. Cir. 2021), so "courts should

revive previously-dismissed claims only if they have some reason to believe that doing so will

not ultimately waste judicial resources," *Thomas v. Holder*, 750 F.3d 899, 903 (D.C. Cir. 2014).

Even if a plaintiff makes that showing, however, "the decision to grant or deny a [R]ule

60(b) motion is committed to the discretion of the District Court." *United Mine Workers of Am.

1974 Pension v. Pittston Co.*, 984 F.2d 469, 476 (D.C. Cir. 1993) (citation omitted). "This relief

'should be only sparingly used,' and reserved for 'extraordinary circumstances.'" *People for the

Ethical Treatment of Animals v. U.S. Dep't of Health & Hum. Servs.*, 901 F.3d 343, 354–55

(D.C. Cir. 2018) (internal citations omitted) ("*PETA*"). In deciding whether to grant Rule 60(b)

relief, the court "must strike a delicate balance between the sanctity of final judgments . . . and

the incessant command of a court's conscience that justice be done in light of all the facts." *Bain

v. MJJ Prods.*, 751 F.3d 642, 646 (D.C Cir. 2014) (citation omitted).

"Relief under Rule 60(b)(1) motions is rare." *Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir.

2006). It may be appropriate if, for example, the district court "harbored a 'mistaken

impression.'" *Nat'l Treasury Emps. Union v. IRS*, 765 F.2d 1174, 1177 n.6 (D.C. Cir. 1985)

(citation omitted).  In cases involving excusable neglect, courts conduct an equitable analysis, considering "the risk of prejudice to the non-movant, the length of delay, the reason for the delay," and "whether the movant acted in good faith."  *FG Hemisphere Assocs. v. Democratic Republic of Congo*, 447 F.3d 835, 838 (D.C Cir. 2006) (citation omitted).

Rule 60(b)(6) relief, moreover, may be available "only when Rules 60(b)(1) through (b)(5) are inapplicable."  *Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022).  "To obtain relief under this provision," the party must "demonstrate 'extraordinary circumstances.'"  *United States v. Philip Morris USA Inc.*, 840 F.3d 844, 852 (D.C. Cir. 2016) (citation omitted).  Extraordinary circumstances may be present when, for example, "a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust."  *PETA*, 901 F.3d at 355 (citation omitted).

**B.      Federal Rule of Civil Procedure 61**

Federal Rule of Civil Procedure 61 places a harmless error caveat on Rule 60(b).  *E.g.*, *Maynard v. District of Columbia*, 579 F. Supp. 2d 137, 143–44 & n.5 (D.D.C. 2008) (applying Federal Rules of Civil Procedure 60(b) and 61 in conjunction).  "Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for . . . vacating, modifying, or otherwise disturbing a judgment or order."  Fed. R. Civ. P. 61.  "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."  *Id.*

"This 'means that the error must have been prejudicial: It must have affected the outcome.'"  *Sibert-Dean v. Wash. Metro. Area Transit Auth.*, 721 F.3d 699, 703 (D.C. Cir. 2013) (citation omitted).  In determining whether an error is harmless, courts consider "a number of factors, including the closeness of the case, the centrality of the issue in question, and the

effectiveness of any steps taken to mitigate the effects of the error." *Huthnance v. District of Columbia*, 722 F.3d 371, 381 (D.C. Cir. 2013).

### III.   ANALYSIS

### A.   Evidentiary Considerations on Summary Judgment

Federal Rule of Civil Procedure 56 sets out several important guidelines for the court's review of the evidence in resolving motions for summary judgment.  Generally, a court may consider any materials in the record.  Fed. R. Civ. P. 56(c)(3).  But the court "cannot rest" its decision "on inadmissible evidence."  *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000).  Thus, affidavits and declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify."  Fed. R. Civ. P. 56(c)(4).

Plaintiffs contend the court improperly considered three items of evidence or the lack thereof.  First, they argue they were entitled to an adverse inference that Defendants destroyed the initial TLO report because it was never produced in discovery.  Second, Plaintiffs argue that Detective Booher's testimony regarding his communication with the school was inadmissible hearsay.  Third, and relatedly, Plaintiffs argue that the general demographic form the suspect filed with the school should not have been considered because it was not properly authenticated.  And finally, Plaintiffs claim that Detective Booher's testimony that Officer Singletary told him he conducted the second TLO search to verify the suspect's address was irrelevant and inadmissible hearsay.

#### i.   *Adverse inferences and spoliation of evidence*

"The 'adverse inference' doctrine allows a court to draw a 'negative evidentiary inference' from the spoliation of records."  *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 572–73 (D.C. Cir. 2019) (citation omitted).  Put another way, when potentially relevant documents

are improperly destroyed, the court may infer that the documents "contained favorable evidence for the party prejudiced by their destruction." *Talavera v. Shah*, 638 F.3d 303, 311 (D.C. Cir. 2011).  This inference "is warranted in the context of a duty to preserve that arises out of foreseeable litigation," *Iyoha*, 927 F.3d at 573 (citation omitted), and a showing of bad faith is not required, *Talavera*, 638 F.3d at 312.  The party seeking the adverse inference, however, "must make 'some showing that the destroyed evidence would have been relevant to the contested issue.'" *Gerlich v. U.S. Dep't of Just.*, 711 F.3d 161, 171 (D.C. Cir. 2013) (citation omitted).

### ii.      Hearsay

Hearsay is generally not admissible.  Fed. R. Evid. 802.  "'Hearsay' means a statement that . . . the declarant does not make while testifying" and "a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  Statements offered against opposing parties by that party, or that "the party manifested that it adopted or believed to be true," are "not hearsay."  Fed. R. Evid. 801(d)(2).

There are several exceptions to the general rule that hearsay is not admissible.  *E.g.*, Fed. R. Evid. 803, 804, 807.  For example, a statement that "is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances," and "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts" may be admissible.  Fed. R. Evid. 807(a).

### iii.      Authentication

Authentication is another "condition precedent to admissibility." *United States v. Khatallah*, 41 F.4th 608, 622 (D.C. Cir. 2022) (citation omitted).  "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence

sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid.

901(a).  Examples of evidence sufficient to authenticate an item include "[t]estimony that an

item is what it is claimed to be," or that "[t]he appearance, contents, substance, internal patterns,

or other distinctive characteristics of the item" authenticate it considering "all the

circumstances."  Fed. R. Evid. 901(b)(1), (4).

The "standard of proof requires only evidence from which the trier could reasonably

believe that an item is still what the proponent claims it to be." *United States v. Mejia*, 597 F.3d

1329, 1336 (D.C. Cir. 2010) (citation omitted).  "The sufficiency of a showing of a document's

authenticity rests within the sound discretion of the trial judge." *United States v. Rembert*, 863

F.2d 1023, 1027 (D.C. Cir. 1988) (citation omitted).

iii.    *Relevance*

Evidence is "relevant"—and therefore admissible—if "it has a tendency to make a fact

more or less probable than it would be without the evidence," and that "fact is of consequence in

determining the action."  Fed. R. Evid. 401.  "Relevancy is not an inherent characteristic of any

item of evidence but exists only as a relation between an item of evidence and a matter properly

provable in the case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387–88 (2008)

(citation omitted).  It is consequently "generally not amenable to broad per se rules." *Id.* at 387.

There are no "degrees of relevancy" under Rule 401; "[e]vidence is either relevant or it is not."

*Ozark Auto. Distribs., Inc. v. NLRB*, 779 F.3d 576, 584 n.11 (D.C. Cir. 2015) (citation omitted).

For example, evidence that a plaintiff was forced to resign from a job with defendant was

relevant to defendant's Lanham Act claim because it "tended to make the fact that [plaintiff] left

to run for Senate less probable than it would have been without that evidence," and an element of

the claim was that plaintiff made a false representation by saying he left the job to run for the

Senate.  *Klayman v. Jud. Watch, Inc.*, 6 F.4th 1301, 1317–18 (D.C. Cir. 2021).

**B.      Rule 60(b) Relief is Not Warranted**

       *i.       Initial TLO report*

Plaintiffs first argue that the court erred by not granting them an adverse inference arising

from the missing TLO database report.  Detective Booher testified that he ran the TLO search

before seeking the warrant and placed the report in his case file, and that the report shows that he

verified the suspect's address prior to applying for the search warrant.  Booher's Dep. Tr., ECF

No. 67-5, Ex. 22 at 62:20–63:16.  But, when Plaintiffs requested the report in interrogatories,

Defendants responded that it did not exist.  Defs.' Answers to Pls.' First Req. for Produc. of

Docs., ECF No. 67-9 at 5.

Plaintiffs are correct that this scenario warranted an adverse inference.  Defendants knew

they executed a search warrant at the wrong residence, and accordingly could have foreseen the

ensuing litigation and therefore the need to preserve relevant materials.  *See Iyoha*, 927 F.3d at

573 (citation omitted).  The TLO report also may have been relevant to the litigation because it

would have confirmed whether Defendants conducted the TLO search and whether Plaintiffs'

address showed up as the suspect's address in the search.  *See Gerlich*, 711 F.3d at 171.

Consequently, the court would have "harbored a 'mistaken impression'" had it decided that an

adverse inference was not warranted.  *Nat'l Treasury Emps. Union v. IRS*, 765 F.2d 1174, 1177

n.6 (D.C. Cir. 1985) (citation omitted).

The court, however, did not decide the adverse inference issue.  Mem. Op. at 7–8.

Rather, it analyzed the warrant's validity "excising the challenged statement—that Booher

'conducted a database query which revealed the address.'"  *Id.* at 10 (citation omitted).  Having

done so, the court found that the search warrant was still supported by probable cause, because

Detective Booher's affidavit stated that the school told him—based on its records--that the

suspect lived at the Q Street address. *Id.* at 10–11.  Moreover, even if the court had decided that

an adverse inference was not warranted, any error would have been harmless, because it did not

"affect[] the outcome," *Sibert-Dean*, 721 F.3d at 703 (citation omitted); *see* Fed. R. Civ. P. 61.

Plaintiffs argue that the adverse inference issue was "outcome determinative" because the

TLO report was "[c]entrally referenced in [the] search warrant affidavit."  Motion at 8.  What

determines whether the issue was outcome determinative, however, is whether it was central to

the court's decision—not whether it was central to the search warrant.  *See Huthnance*, 722 F.3d

at 381.  The court excised the statements about the TLO report from the affidavit, and still

concluded the search warrant was supported by probable cause.  *See* Mem. Op. at 10–11.  Thus,

whether Plaintiffs were entitled to an adverse inference was not, in fact, "outcome

determinative."

      *ii.*      *School Communications*

Next, Plaintiffs claim that the court should not have considered Detective Booher's

testimony that he communicated with the school regarding the suspect's address because the

school's responses were hearsay.  Plaintiffs, however, raise this issue for the first time in their

motion for reconsideration, and have not provided any justification for neglecting to raise it

earlier.  It is therefore unlikely that Rule 60(b) relief would be warranted even if Plaintiff's

argument was meritorious.[1]  *See FG Hemisphere Assocs.*, 447 F.3d at 838 (citation omitted);

*Philip Morris USA Inc.*, 840 F.3d at 852 (citation omitted).

Moreover, Plaintiffs have failed to explain *why* they believe the school employee's

statement to Detective Booher was inadmissible hearsay.  The court considered the statement to

determine whether the search warrant was supported by probable cause; thus, the statement was

used to establish that Detective Booher was told that the suspect lived at the Q Street address.

Therefore, the court did not consider the statement for the "truth of the matter asserted," Fed. R.

Evid. 801(c), which would have been that the suspect did indeed live at the Q Street address.

And even if the statement was hearsay, Plaintiffs have not identified any reason that it would

have been error for the court to find it qualified for the exception for records of a regularly

conducted activity under Federal Rule of Evidence 803(6) or because it was "supported by

sufficient guarantees of trustworthiness—after considering the totality of the circumstances," and

"more probative on the point for which it is offered than any other evidence that the proponent

can obtain through reasonable efforts" under Federal Rule of Evidence 807(a).  Consequently,

Plaintiffs are not entitled to Rule 60(b) relief on this ground.

  *iii.  General demographic form*

Plaintiffs also argue that the court should not have considered the general demographic

form the school provided the officers to confirm the suspect's address because it was not

authenticated.  This argument is unpersuasive for several reasons.  First, Plaintiffs again raise

this issue for the first time in their motion for reconsideration, and have not provided any

---

[1] Plaintiffs contend that they raised this issue in opposition to Defendants' motion for summary judgment, Motion at 8–9, but the footnote they point to argues only that Detective Booher is not a credible witness, Opp'n to Mot. for Summ. J., ECF No. 67 at 15 n.2.  In fact, the word "hearsay" did not appear anywhere in Plaintiffs' opposition.

justification for their failure to raise it earlier.  It is therefore unlikely that Rule 60(b) relief would

be warranted even if Plaintiff's argument was meritorious.  *See FG Hemisphere Assocs.*, 447

F.3d at 838 (citation omitted); *Philip Morris USA Inc.*, 840 F.3d at 852 (citation omitted).

Second, the record provides evidence sufficient to authenticate the general demographic

form.  An employee at the school indicated that the form was consistent with the school's

"general demographic screen from [its] PowerSchool system."  Rodriguez Dep. Tr., ECF No. 81-

1 at 33:06–14.  Thus, even though the employee was not familiar with the suspect's particular

form, the court would not have erred in using its "sound discretion" to determine that the form

was kept in the regular course of school business and met  the authenticity requirement.  *See*

*Rembert*, 863 F.2d at 1027 (citation omitted).

Finally, the court did not rely on the general demographic form in analyzing the validity

of the search warrant.  Rather, it found that the school communications alone were sufficient to

establish probable cause.  *See* Mem. Op. at 10.  The court mentioned the general demographic

form only once in its Opinion—in the background section.  *See id.* at 2.  Consequently, the

court's decision not to apply an adverse inference did not "affect[] the outcome," *Sibert-Dean*,

721 F.3d at 703 (citation omitted), and any error would have been harmless, *see* Fed. R. Civ.

P. 61.

> iv.    *Post-Warrant TLO Search*

Lastly, Plaintiffs argue that the court should not have considered Detective Booher's

testimony that Officer Singletary told him he conducted a second TLO search because the

statement was irrelevant and hearsay.  Plaintiffs, however, not only failed to raise this issue

earlier, but at summary judgment they did "not dispute" Defendants' factual assertion that

"Officer Singletary, of the warrant squad, verified that the address was still good by doing a

'reverse search' of the address.".  *Compare* Defs.' Statement of Facts, ECF No. 59-2 ¶¶ 33–34,

*with* Pls. Statement of Facts, ECF No. 67-1 at 1.  Moreover, Plaintiffs again provide no

explanation for why they did not make this argument in their opposition, so it is unlikely that

Rule 60(b) relief would be warranted regardless of the merit of Plaintiffs' claim.  *See FG*

*Hemisphere Assocs.*, 447 F.3d at 838 (citation omitted); *Philip Morris USA Inc.*, 840 F.3d at 852

(citation omitted).

Even assuming Rule 60(b) relief was otherwise warranted, however, any error would

have been harmless.  *See* Fed. R. Civ. P. 61.  The court held that the school communications

alone were sufficient to establish probable cause.  Mem. Op. at 10.  It then "note[d] that Officer

Singletary searched the TLO database," and explained that this undisputed fact "undermine[d]

Plaintiffs' contention that the officers recklessly or intentionally included incorrect information

regarding who lived at the home when they sought the search warrant."  *Id.* at 11.  It did not rely

on this statement in concluding that the warrant was supported by probable cause.  Consequently,

the court's decision not to apply an adverse inference did not "affect[] the outcome."  *Sibert-*

*Dean*, 721 F.3d at 703 (citation omitted).

## IV.    CONCLUSION

For the foregoing reasons, the court will DENY Plaintiffs' Motion for Reconsideration,

ECF No. 78.  An Order will accompany this Memorandum Opinion.


Date: April 26, 2024


*Tanya S. Chutkan*
_____
TANYA S. CHUTKAN
United States District Judge